JONATHAN V. GOULD (DC Bar No. 477569)
Senior Deputy Comptroller and Chief Counsel
BAO NGUYEN (NC Bar No. 39946)
Principal Deputy Chief Counsel
GREGORY F. TAYLOR (DC Bar No. 417096)
Director of Litigation
PETER C. KOCH (IL Bar No. 6225347)
Assistant Director of Litigation
MARSHA STELSON EDNEY (DC Bar No. 414271)
Counsel
ASHLEY W. WALKER (DC Bar No. 488126)
Counsel
ALISSA V. SAGRI (MD No. 0812180099)
Counsel
AMBER N. MELTON (MD No. 1405200002)
Counsel
HANNAH E. HICKS (AL Bar No. 9577S61W)
Attorney
     Office of the Comptroller of the Currency
     400 7th Street, SW
     Washington, D.C. 20219
     Telephone: (202) 649-6300
     Facsimile: (202) 649-5709
     ashley.walker@occ.treas.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| NATIONAL COMMUNITY REINVESTMENT COALITION; CALIFORNIA REINVESTMENT COALITION, <br><br>           Plaintiffs, <br><br>   v. <br><br> OFFICE OF THE COMPTROLLER OF THE CURRENCY and BRIAN BROOKS, in his official capacity as Acting Comptroller of the Currency, <br><br>           Defendants. | CASE NO. 20-CV-04186-KAW <br><br> **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Date: November 5, 2020 <br> Time: 1:30 p.m. <br> Place: 1301 Clay Street <br> Before: Magistrate Judge Kandis A. Westmore |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................1

II.    PLAINTIFFS LACK STANDING ........................................................................2

    A.    Absent an Existing Legal Right to Information, Plaintiffs Have No Cognizable Informational Injury from the Final Rule's Data Disclosure Provisions ............................2

    B.    Changes in Avenues for Public Input Fail to Allege Injury-in-Fact ....................................4

    C.    Allegations of Reduced CRA Activity Benefitting LMI Communities Are Insufficient to Confer Standing ...........................................................5

        1.    Theories of Competitive Injury Are Inapplicable to Plaintiffs ...............5

        2.    Plaintiffs' Allegations of a Decrease in CRA Activity Benefitting LMI Communities Remain Speculative ...................................6

        3.    Plaintiffs' Allegations Are Not Traceable to the Final Rule ..................9

III.    THE CASE IS NOT RIPE BECAUSE PERFORMANCE BENCHMARKS AND THRESHOLDS ARE NOT YET PROMULGATED AND KEY GUIDANCE IS NOT RELEASED ........................................................................................10

IV.    BECAUSE THE COMPLAINT RAISES CLAIMS OUTSIDE CRA'S ZONE OF INTERESTS, IT SHOULD BE DISMISSED UNDER RULE 12(b)(6) ....................11

    A.    Plaintiffs' Alleged Relationship to CRA and Alleged Injuries Demonstrate That They Are Not Within CRA's Zone of Interests ....................................12

    B.    Preserving Uniformity Across Agencies' Regulations Frustrates CRA's Purpose ....................................................................13

V.    PLAINTIFFS' CLAIMS OF *ULTRA VIRES* ACTION AND AN "UNALTERABLY CLOSED MIND" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ........................14

    A.    Plaintiffs' Claims that the Final Rule Violates CRA's Statutory Mandates Each Lack a Cognizable Legal Basis ....................................14

        1.    The OCC's 12(b)(6) Motion Is Appropriate ...........................................15

        2.    Plaintiffs' *Ultra Vires* Claims Lack a Cognizable Legal Basis ...............15

    B.    As a Matter of Law, Plaintiffs' Allegations Do Not Support a Claim of an "Unalterably Closed Mind" ..............................................18

CONCLUSION..........................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615 (D.C. Cir. 2020) .................................. 3

*Am. Fed'n of Teachers v. DeVos*, No. No. 5:20-CV-00455-EJD, 2020 WL 5257561 (N.D. Cal. Sept. 3, 2020) ............................................................................................................................................ 3

*Apple Inc. v. Allan & Associates Ltd.*, 445 F. Supp. 3d 42 (N.D. Cal. 2020) .......................................... 17

*ASARCO Inc. v. Kadish*, 490 U.S. 605 (1989) ......................................................................................... 9

*Ass'n of Nat'l Advertisers, Inc. v. Fed. Trade Comm'n*, 627 F.2d 1151 (D.C. Cir. 1979) ...................... 19

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ........................................................... 17

*Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144 (9th Cir. 2017) ............................................................ 11

*Blumenkron v. Eberwein*, 715 F. App'x 633 (9th Cir. 2017) .................................................................... 11

*California v. Bureau of Land Mgmt.*, --- F. Supp. 3d ---, 2020 WL 1492708 (N.D. Cal. Mar. 27, 2020) 11

*California v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054 (N.D. Cal. 2018) ........................................ 19

*City & Cty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, 408 F. Supp. 3d 1057 (N.D. Cal. 2019), *appeal dismissed sub nom. La Clinica de La Raza, Inc. v. Trump*, No. 19-17483, 2020 WL 1170719 (9th Cir. Feb. 4, 2020) ......................................................................................................... 12

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .............................................................................. 10

*Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112 (9th Cir. 2009) .................................. 10, 11

*CRC v. Kraninger, et al.*, 4:19-CV-02572 (N.D. Cal. 2010) ..................................................................... 3

*Ctr. for Biological Diversity v. Bernhardt,* 946 F.3d 553 (9th Cir. 2019) ................................................. 5

*Ctr. for Envtl. Health v. Perdue*, No. 18-CV-1763-RS (N.D. Cal. 2018) .............................................. 18

*Ctr. for Envtl. Health v. Perdue*, No. 18-CV-1763-RS, 2018 WL 9662437 (N.D. Cal. Aug. 21, 2018) 15, 16, 17

*Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019) ......................................................................... 9

*Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202 (N.D. Cal. 2019) ............................ 2

*Exch. Bank v. Dir. of the Office of Thrift Supervision*, 29 F. Supp. 2d 1272 (N.D. Okla. 1998) ............ 13

*Flower v. Wachovia Mortg. FSB*, No. C 09–343 JF (HRL), 2009 WL 975811 (N.D. Cal. Apr. 10, 2009

.......................................................................................................................................................... 15

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ........................................................................ 2

*In re Coleman*, 560 F.3d 1000 (9th Cir. 2009) .................................................................................... 11

*Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944 (9th Cir. 2017) ...................................... 5

*Kohn v. State Bar of California*, No. 20-CV-04827-PJH, 2020 WL 4701092 (N.D. Cal. Aug. 13, 2020)

.......................................................................................................................................................... 11

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,* 624 F.3d 1083 (9th Cir. 2010) ... 2

*Leaf Tobacco Exporters Ass'n, Inc. v. Block*, 749 F.2d 1106 (4th Cir. 1984) ........................................ 13

*Lee v. Bd. of Governors of the Fed. Reserve Sys.*, 118 F.3d 905 (3d Cir. 1997) ..................................... 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................... 1, 11, 12

*Liquid Carbonic Indus. Corp. v. F.E.R.C.*, 29 F.3d 697 (D.C. Cir. 1994).......................................... 12, 13

*Louisiana Energy & Power Auth. v. Fed .Energy Regulatory Comm'n*, 141 F.3d 364 (D.C. Cir. 1998) .. 5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................................................... 7, 9

*Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184 (3d Cir. 2016) ............................... 12

*Marino v. Nat'l Oceanic & Atmospheric Admin.*, 451 F. Supp. 3d 55 (D.D.C. 2020) ............................. 3

*McKinney v. U.S. Dep't of Treasury*, 799 F.2d 1544 (Fed. Cir. 1986).................................................... 13

*Nat'l Educ. Ass'n v. DeVos*, 345 F. Supp. 3d 1127 (N.D. Cal. 2018) ...................................................... 3

*New Grade Int'l, Inc. v. Scott Techs.,* No. C03–2628RSM, 2004 WL 5571416 (W.D. Wash. Nov. 30,

2004) ................................................................................................................................................ 15

*New World Radio, Inc. v. F.C.C.*, 294 F.3d 164 (D.C. Cir. 2002)......................................................... 5, 6

*New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019)........................................ 15

*Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846 (9th Cir. 2005) ..................................... 12

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946

F.3d 1100 (9th Cir. 2020) ................................................................................................................. 6

*Saget v. Trump*, 375 F. Supp. 3d 280 (E.D.N.Y. 2019) ........................................................................ 15

*Schmier v. U.S. Court of Appeals for Ninth Circuit,* 279 F.3d 817 (9th Cir.2002) ................................. 18

*Serra v. Lappin*, No. C07-01589 MJJ, 2008 WL 929525 (N.D. Cal. Apr. 3, 2008) ............................ 18

*Sherley v. Sebelius*, 610 F.3d 69 (D.C. Cir. 2010) ....................................................................... 6

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ........................................................................ 2

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ........................................... 17

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........ 15

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) .......................................................... 5

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ....................................................... 11

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .......................................................................... 10

*Willapoint Oysters v. Ewing*, 174 F.2d 676 (9th Cir. 1949) ................................................... 19

**STATUTES**

12 U.S.C. § 2901 .......................................................................................... 6, 12, 13, 16

12 U.S.C. § 2903 ...................................................................................................... 17

12 U.S.C. § 2905 ...................................................................................................... 14

12 U.S.C. § 2906 ................................................................................................ 14, 15

15 U.S.C. § 1691c-2 ................................................................................................. 3

Community Reinvestment Act of 1977 ("CRA"), 12 U.S.C. §§ 2901 *et seq.* ........................... 1

**REGULATIONS**

12 C.F.R. § 25.04 ................................................................................................ 7, 8

12 C.F.R. § 25.07 ................................................................................................ 7, 8

12 C.F.R. § 25.11 ...................................................................................................... 8

12 C.F.R. § 25.16 ...................................................................................................... 4

CRA, Final Regulations ("Final Rule"), 85 Fed. Reg. 34,734 (June 5, 2020) ............. 1, 4, 7, 8, 10, 11, 15

CRA, Interagency Q&As Regarding Community Reinvestment; Guidance, 81 Fed. Reg. 48,506 (July 25, 2016) ............................................................................................... 7, 8, 9

CRA, Joint Notice of Proposed Rulemaking ("JNPR"), 85 Fed. Reg. 1204 (Jan. 9, 2020) ..................... 18

Federal Reserve System, CRA, Advanced Notice of Proposed Rulemaking (Sept. 22, 2020), *available at*

    https://www.federalreserve.gov/aboutthefed/boardmeetings/files/cra-fr-notice-20200921.pdf ........... 14

**RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................... 14, 15

**OTHER AUTHORITIES**

As CRA Rule Takes Effect, OCC Issues Compliance Resources," ABA Banking Journal (Oct. 1, 2020),

    *available at* https://bankingjournal.aba.com/2020/10/as-cra-rule-takes-effect-occ-issues-cra-

    compliance-resources/ ................................................................................................................... 14

## I.    INTRODUCTION

In their Opposition brief (ECF Dkt. No. 35, "Opp."), the National Community Reinvestment Coalition ("NCRC") and the California Reinvestment Coalition ("CRC") (collectively "Plaintiffs") urge the Court to postpone ruling on Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF Dkt. No. 25, "OCC Mot.") until after the filing of an administrative record at summary judgment. But no further development of the record is needed. With reference to the provisions of the regulation at issue, the authorizing statute, and other controlling law, the Court may conclude as a matter of law that Plaintiffs' claims against the Office of the Comptroller of the Currency and Acting Comptroller Brian Brooks (collectively "OCC") should be dismissed.

First, Plaintiffs lack standing because the harms they allege to stem from the OCC's rule, 85 Fed. Reg. 34,734 (June 5, 2020) ("Final Rule" or "FR") under the Community Reinvestment Act of 1977 ("CRA"), Public Law 95-128, 91 Stat. 1147, *codified at* 12 U.S.C. §§ 2901 *et seq.*, are speculative, implausible, and inadequate to constitute injury-in-fact. Moreover, even if a single allegation of harm were sufficient to confer standing (none is), the case is not ripe because the OCC has not yet promulgated the benchmarks and thresholds necessary to implement the new general performance standards under the Final Rule. As Plaintiffs concede *in the Complaint*, these benchmarks and thresholds are necessary to ascertain in full how financial institutions subject to the OCC's CRA regulation (collectively "banks") will be encouraged to serve the needs of their entire communities—including low- and moderate-income ("LMI") and other communities of need—under the Final Rule. Without these benchmarks and thresholds, the case is not presently fit for adjudication and should be dismissed.

In the alternative, the Complaint should be dismissed for failure to satisfy the zone-of-interests test. Under *Lexmark International, Inc. v. Static Control Components, Inc.*, Plaintiffs lack a legislatively conferred cause of action that encompasses their claims. 572 U.S. 118, 127 (2014). Finally, CRA contains none of the statutory mandates that the Complaint asserts the Final Rule violates in its claims of *ultra vires* action. And the purported facts underlying Plaintiffs' allegations that the former Comptroller possessed an "unalterably closed mind" all predate the rulemaking. Thus, these claims are not legally cognizable, and should be dismissed for failure to state a claim.

**II.**     PLAINTIFFS LACK STANDING

The Court lacks subject matter jurisdiction to hear this case because Plaintiffs lack standing individually and on behalf of their members. *See* Fed. R. Civ. P. 12(b)(1). Their asserted harms based upon changes in information disclosure, opportunities to provide input on the CRA process, and impacts on LMI communities are insufficient to demonstrate injury-in-fact that is fairly traceable to the Final Rule and likely to be redressed by a favorable judicial decision. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The declarations from a sample of Plaintiffs' members attached to their Opposition merely reiterate their speculative and insufficient allegations. Plaintiffs also fail in their attempt to establish organizational standing through allegations of "concrete and demonstrable injury to the[ir] organization[s'] activities—with the consequent drain on the organization[s'] resources." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). In this regard, the Complaint offers nothing more than speculation as to future expenditures of resources, based on mischaracterizations of and unsupported assumptions about the Final Rule's impact.[1] *See* OCC Mot. at 12-14. As explained below, Plaintiffs' unsupported assertions of remote and speculative harms do not constitute any injury-in-fact traceable to the Final Rule that would be redressable by a favorable judicial decision, and therefore, alleged efforts to counter these purported harms do not confer organizational standing. *See id.*; *cf. La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,* 624 F.3d 1083, 1088 (9th Cir. 2010) (diversion of resources must counteract injury).

**A.      Absent an Existing Legal Right to Information, Plaintiffs Have No Cognizable Informational Injury from the Final Rule's Data Disclosure Provisions**

Plaintiffs' alleged injury based on the Final Rule's changes to the type of information in public disclosures is insufficient to confer standing. *See* OCC Mot. at 16-18. When an alleged injury-in-fact is based on deprivation of information, a plaintiff must allege that: "'(1) it has been deprived of information that, on its interpretation, a statute [or regulation] requires the government or a third party to

---

[1] Plaintiffs list purported examples of past expenditures in their Opposition, at 17 n.8. But Plaintiffs cannot amend the Complaint with their brief. *Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019). Moreover, amendment is futile because the expenditures listed are akin to those of anticipated litigation, not those necessary to counteract actual injuries. *See* OCC Mot. at 13.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

disclose, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure.'" *Am. Fed'n of Teachers v. DeVos*, No. 5:20-CV-00455-EJD, 2020 WL 5257561, at *7 (N.D. Cal. Sept. 3, 2020) (citing *Marino v. Nat'l Oceanic & Atmospheric Admin.*, 451 F. Supp. 3d 55, 60 (D.D.C. 2020)). Acknowledging that they do not have a statutory entitlement to the information at issue, Plaintiffs assert that a different test applies instead. Opp. at 20. According to Plaintiffs, standing exists if the deprivation of information results from an APA violation and leads to other "concrete and particularized" injuries. *Id*. Plaintiffs' cited authorities articulate no such test, *id*. at 20-21, and are fundamentally distinguishable because they involve cases where plaintiffs had a legal right to the information at issue. *See, e.g., Am. Anti-Vivisection Soc'y v. U. S. Dep't of Agric.*, 946 F.3d 615, 619 (D.C. Cir. 2020) ("[T]he Coalition seeks standards that it alleges USDA is legally required to promulgate."); *Nat'l Educ. Ass'n v. DeVos*, 345 F. Supp. 3d 1127, 1140 (N.D. Cal. 2018) (rule delaying implementation of regulation that required disclosures inflicted injury-in-fact). The CRA statute contains no requirement for the disclosures Plaintiffs seek. OCC Mot. at 16. *Cf.* 15 U.S.C. § 1691c-2 (directing the Consumer Financial Protection Bureau ("Bureau") to collect small business data for public disclosure).[2]

This Court should reject Plaintiffs' attempt to recast their injuries as something other than purely informational because each of their alleged supplementary injuries, Opp. at 20-21, are "fundamentally derivative" of not receiving the exact level of detail in small loans to business and farms ("SLBF") data that they seek. *Am. Fed'n of Teachers*, 2020 WL 5257561, at *9 (rejecting standing when secondary injuries were "unavoidably informational in nature."); *Marino*, 451 F. Supp. 3d, at 62. Plaintiffs' mischaracterization of the OCC's position—"the mere act of changing a rule deprives affected entities the right to challenge the change" Opp. at 22— also misses the mark. Without congressional intent to require that specific information be disclosed, Plaintiffs' allegations of informational injury based on a revision of a *discretionary* regulatory provision are simply insufficient to confer standing. This is

---

[2] Plaintiff CRC sued the Bureau for unreasonably delaying rulemaking under this data collection and disclosure statute. *See CRC v. Kraninger, et al*., 4:19-CV-02572 (N.D. Cal. 2010).

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

1   particularly true here where the OCC is neither denying nor withholding information in total; only

2   modifying the granularity of it. OCC Mot. at 9, 17. Therefore, under the applicable test for informational

3   injury set forth above, the Court should conclude that Plaintiffs lack standing.

4   **B.      Changes in Avenues for Public Input Fail to Allege Injury-in-Fact**

5       Plaintiffs wrongly assert that they are injured because the OCC has "remov[ed] opportunity for

6   public input on bank performance." Opp. at 9, 23-24. In reality, the Final Rule preserves and expands

7   opportunities for Plaintiffs to provide input to the CRA process. OCC Mot. at 5-6, 8-9, 14-15. First, in

8   assessing a bank's performance context, the Final Rule requires the OCC to consider, *inter alia*, "written

9   comments about assessment area needs and opportunities," as well as other "information deemed

10  relevant by the OCC"; therefore, the OCC will continue to consider public input relevant to assessing

11  banks' performance. *See* 12 C.F.R. § 25.16(b)(4)-(5).[3] Such community needs and opportunities, both

12  those being addressed and those not being addressed by banks, as well as banks' opportunities to engage

13  in qualifying activities based on demand for the activity and demographic factors, are among the

14  performance context factors the OCC will consider. *See, e.g.,* 12 C.F.R. § 25.16(b)(1)(v), (2)(i)-(iii).

15  Thus, the Final Rule requires the OCC's examiners to consider performance context, informed by

16  written comments from the public, to make a supervisory determination regarding whether a bank's

17  presumptive CRA performance rating should be adjusted. *See* OCC Mot. at 8-9.

18      Second, Plaintiffs offer no counter to the OCC's argument that the Final Rule's new qualifying

19  activity confirmation process[4] enables Plaintiffs and their members to more effectively advocate for

20  CRA credit for innovative and responsive projects and give input to the CRA process. OCC Mot. at 14.

21  This feature will enable Plaintiffs to better negotiate with banks and better promote their interests and

22  those of their members. *Id.* Thus, Plaintiffs' asserted injury-in-fact due to a change in the description of

23

24  _____

25  [3] Herein, the provisions of the Final Rule are cited using the C.F.R. citations effective as of October 1, 2020. Rule text also appears at 85 Fed. Reg. 34,792-809.

26  [4] The URL for the OCC's illustrative list of qualifying activities, OCC Mot. at 6 n.5, has been revised to

27  https://www.occ.gov/topics/consumers-and-communities/cra/cra-illustrative-list-of-qualifying-activities.pdf.

28  REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
    CASE NO. 20-CV-04186- KAW

written comments, is neither concrete nor particularized, is speculative, and, therefore, is insufficient to confer standing. *See Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 559-60 (9th Cir. 2019).

Finally, the procedural injury cases Plaintiffs rely upon, Opp. at 23, if relevant at all, support the OCC's position that Plaintiffs suffer no injury-in-fact because (1) the OCC will continue to consider written comments, resulting in no deprivation of any procedural right, and, (2) there is no plausible allegation that Plaintiffs' concrete interests are affected given the continuing opportunities to provide input. *See, e.g., Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing") (citation omitted).

## C. Allegations of Reduced CRA Activity Benefitting LMI Communities Are Insufficient to Confer Standing

### 1. Theories of Competitive Injury Are Inapplicable to Plaintiffs

Plaintiffs urge the Court to find injury-in-fact under the doctrine of competitor standing, which holds that "parties suffer constitutional injury in fact when agencies lift regulatory restrictions on their competitors or otherwise allow increased competition." *Louisiana Energy & Power Auth. v. Fed .Energy Regulatory Comm'n*, 141 F.3d 364, 367 (D.C. Cir. 1998). However, this doctrine is inapplicable here because Plaintiffs and their members are not *in competition with* other parties under CRA.

First, Plaintiffs cannot point to either a direct increase in competition to offer particular services, or actual instances of losing business opportunities to any alleged competitors. In *International Brotherhood of Teamsters v. U.S. Department of Transportation*, the court found standing because the challenged agency action—the granting of long-haul truck operating authority to Mexican carriers— introduced new competition into the market and clearly made it more difficult for stateside truckers to profit. 861 F.3d 944, 951 (9th Cir. 2017). Thus, the competitor injury doctrine is premised on a plaintiff's status as "a direct and current competitor whose bottom line may be adversely affected" by a challenged action. *New World Radio, Inc. v. Fed. Commc'n Comm'n*, 294 F.3d 164, 170 (D.C. Cir. 2002). Here, Plaintiffs fail to allege or show that they are (i) engaged in the same business with other potential recipients of CRA funding (their "alleged competitors"), (ii) engaged in direct competition for

customers and/or profits with any alleged competitors; or (iii) any actual instance of losing business opportunities. *See* Opp. at 13-14.

Second, "CRA dollars" are not, as Plaintiffs insist, a marketplace with a fixed "pool of CRA funding" for the bank loans and grants that Plaintiffs and their members may seek to secure. *See id*. While Plaintiffs are correct that the competitor-standing doctrine can apply to grant applicants, *see e.g. Planned Parenthood of Greater Washington & North Idaho v. U.S. Department of Health & Human Services*, 946 F.3d 1100, 1108-09 (9th Cir. 2020), cases finding so present fundamentally different facts. Grants eligible for CRA credit are funded by third-party banks, not the OCC, and CRA loans and investments are not a finite resource subject to zero-sum competition. *See, e.g., Sherley v. Sebelius*, 610 F.3d 69, 73-74 (D.C. Cir. 2010) (finding of competitive injury premised, in part, on "uncontested finding" that NIH's grant funding is fixed). Banks are only limited in what CRA credit eligible loans and investments they can make by safety-and-soundness considerations. *See* 12 U.S.C. § 2901(b). Plaintiffs are simply not in direct competition for a market share of loans or grants with anyone in the manner contemplated by the competitive-injury line of cases.

Third, Plaintiffs' purported competitor injuries are particularly suspect because they are based on speculation that third-party banks will divert CRA dollars away from them and their members—injuries which are too attenuated to sufficiently allege "certainly impending" competitive injuries. *See New World Radio, Inc.,* 294 F.3d at 172 ("chain of events" argument dependent on "independent actions of third parties" insufficient to confer standing); *see also infra* Section II.C(2)-(3). Importantly, the Final Rule incentivizes CRA activity benefitting LMI individuals, families, and census tracts (OCC Mot. at 18-20), inherently "tilting the playing field," to the extent one metaphorically exists, to favor the types of CRA activities that benefit the communities served by Plaintiffs and their members.

### 2. Plaintiffs' Allegations of a Decrease in CRA Activity Benefitting LMI Communities Remain Speculative

The majority of Plaintiffs' alleged injuries are premised on assumptions about how the Final Rule will impact banks' behavior, often based on mischaracterizing the Final Rule's provisions and how they differ from the OCC's previous CRA regulatory framework. *See* Opp. at 6-9, 13-19. Their brief and

1  supporting declarations offer more of the same conclusory and speculative assertions contained in the

2  Complaint. Plaintiffs provide a litany of unsupported assertions for how provisions in the Final Rule

3  potentially "dilute" CRA's focus on LMI communities (some of which Plaintiffs did not allege as

4  particularized harm in their Complaint, *Compare* Opp. at 6-9 *with* Compl. ¶¶ 137-161). But in the end,

5  Plaintiffs simply cannot point to any "actual or imminent," non-speculative risk that financing for LMI

6  communities will be diluted to their detriment or to that of their members. *Lujan v. Defenders of*

7  *Wildlife*, 504 U.S. 555, 560 (1992).

8       For example, Plaintiffs' allegations of harm stemming from the availability of CRA credit for

9  financing of essential infrastructure and community facilities projects contain several errors. They

10  wrongly argue that it is "undisputed" that the Final Rule will "*force*" Plaintiffs "*for the first time* . . . [to]

11  compete with large-scale infrastructure and similar projects." Opp. at 13-14 (emphasis added). However,

12  Plaintiffs admit that these project types previously qualified for CRA credit under the former

13  framework. Opp. at 6. Moreover, under the prior rule, such project types that helped "revitalize or

14  stabilize a distressed or underserved nonmetropolitan middle-income geography," could indeed receive

15  *full* CRA credit, as long as they met essential community needs, *including* (but not limited to) needs of

16  LMI individuals. *See Interagency Q&As Regarding Community Reinvestment; Guidance*, 81 Fed. Reg.

17  48,506, 48,528 (July 25, 2016) ("Q&As"). Plaintiffs also provide examples of project types, *i.e.,* police

18  stations and bridges, that they assert will newly qualify for CRA credit. Opp. at 6-7. Yet projects for

19  *both* police stations and bridges could receive credit under the previous framework. *See* Q&As at 48,528

20  (permitting CRA credit consideration for both public safety and public service infrastructure and

21  facilities). Importantly, Plaintiffs ignore that, under the Final Rule, projects that only *partially* serve LMI

22  individuals or other communities of need will *only receive partial credit*—that is *pro rata* credit only for

23  the portion of a *project* that *benefits* LMI individuals or other communities of need. *See* OCC Mot. at 20;

24  *see also* 12 C.F.R. § 25.07(e); FR 34,744, 34,754. This aspect of the Final Rule, which Plaintiffs

25  completely disregard, negates any alleged harm.

26       Plaintiffs also erroneously assert that the Final Rule will newly allow CRA credit for financing

27  "naturally occurring affordable housing" investments (*i.e.*, unsubsidized residential rental proprieties, 12

28  REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

C.F.R. § 25.04(c)(1)(i)(A)) that is not verified to be occupied by LMI individuals. Opp. at 7; Bruce Decl. ¶ 14; Dickerson Decl. ¶ 9. Under the previous framework, however, banks were never required to verify the income of tenants in naturally occurring affordable housing. *See* Q&A's at 48,525-26. Plaintiffs also assert that the Final Rule makes a measurement of the distribution of a banks' branches that serve areas of need "'*barely one percent* of banks' CRA scores," Opp. at 8 (emphasis added). This is incorrect. Rather, under the general performance standards, banks can receive *up to one percentage point* (*added to the ratio of CRA activity over deposits*) based on their branch distribution as part of their total CRA evaluation measure. 12 C.F.R. § 25.11(b); FR 34,771. As another example of how their allegations fall short, Plaintiffs point to the expansion of financial literacy education to individuals of *any income*, 12 C.F.R. § 25.04(c)(9), but make no plausible allegation that banks will actually engage in significant efforts outside of communities of need, or that LMI individuals would be excluded. Moreover, because this activity is generally counted by volunteer hours, 12 C.F.R. § 25.07(a), it is implausible to allege it would entail more than a comparatively small percentage of overall CRA activity.

Additionally, Plaintiffs now assert, for the first time, that provisions on deposit-based assessment areas result in injury-in-fact because *not enough* assessment areas will be delineated, and the size of the assessment areas may be *too large*. Opp. at 7-8; Compl. ¶¶ 137-161. Plaintiffs rely on a 2017 study which they claim shows lending declines "when CRA exams *no longer assess* a metropolitan area or county." *Id.* (emphasis added). But the Final Rule's provisions for deposit-based assessment areas only *add* to scope of assessment area coverage under previous framework. *See* OCC Mot. at 6.

Moreover, Plaintiffs' Opposition fails to refute several of the OCC's arguments, including that: (i) general-performance-standards benchmarks and thresholds, which will influence banks' behavior, have not yet been promulgated, *see infra* Section III; (ii) aspects of the Final Rule, such as multipliers, incent the very activities Plaintiffs allege will decrease; and (iii) the proposition that banks will focus on high dollar activities and neglect retail lending to LMI populations and other smaller dollar activities responsive to community needs is implausible because that approach would cause a bank's CRA performance to be rated lower. *See* OCC Mot. at 18-20. Plaintiffs' failure to refute these and other arguments demonstrates that their allegations are wholly speculative and undermines the alleged harm.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

8

### 3.      Plaintiffs' Allegations Are Not Traceable to the Final Rule

Plaintiffs' speculative predictions fail to recognize that the alleged harm, if it occurs, would be the result of actions by independent third parties not before the court, *i.e.*, OCC- regulated banks. *See Lujan*, 504 U.S. at 562 (where element of standing depends on "unfettered choices made by independent actors not before the courts," plaintiff must demonstrate that choices have or will be made so as to produce causation and permit redressability of injury. (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989))). In the end, Plaintiffs fail to refute that banks' future allegedly harmful CRA investment decisions are insufficiently traceable to the Final Rule for standing purposes.

Because the Complaint identifies no instance of an actual decrease in, or loss of, CRA-eligible loans or investments, Opp. at 16, it must "plausibly allege 'that third parties will likely react in predictable ways.'" *Id*. at 17 (citing *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019)). Instead, Plaintiffs merely repeat their conclusory and speculative allegations that banks "will avail themselves of the opportunities [the OCC has] created and shift their CRA activity toward more lucrative opportunities and away from the LMI-targeted investments on which Plaintiffs and their members focus." Opp. at 17. These self-serving allegations and similar assertions in Plaintiffs' members declarations are simply too speculative and tenuous to plausibly allege injury traceable to the Final Rule because (i) neither the Final Rule, the previous framework, nor the CRA statute *requires* any bank to engage in any specific CRA eligible activity;[5] and (ii) each bank has its own unique business plan, markets, and areas of expertise that impact the types of CRA activities they pursue (for example, not all banks are located in a rural area or have the expertise to engage in agriculture/farm lending). Ultimately, any decisions on what specific CRA eligible loans or investments will be made is up to the banks' independent business judgments.

---

[5] Also, CRA does not require banks to enter agreements with Plaintiffs and their members to fund loans and grants. *See* Q&As at 48,548 ("CRA does not require an institution to enter into agreements with private parties. The Agencies do not monitor compliance with nor enforce these agreements.").

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

**III.**   THE CASE IS NOT RIPE BECAUSE PERFORMANCE BENCHMARKS AND THRESHOLDS ARE NOT YET PROMULGATED AND KEY GUIDANCE IS NOT RELEASED

Even if Plaintiffs have standing, the case should still be dismissed because Plaintiffs' claims are not ripe; the OCC has not yet promulgated the benchmarks and thresholds for the general performance standards, which are necessary for fully implementing the Final Rule, or issued key supervisory guidance. OCC Mot. at 21-22, 22 n.14. Although the Complaint acknowledged that the yet-to-be-proposed thresholds and benchmarks are "critical" and "essential" to implementing the Final Rule, *see e.g.*, Compl. ¶¶ 116, 123-125, Plaintiffs now disregard the significance of the proposed benchmarks and thresholds as a "red-herring." Opp. at 27. Instead, Plaintiffs assert that their claims are ripe because the Final Rule went into effect on October 1, 2020. Opp. at 16-17, 27-28. However, the October 1 effective date only starts the transition period for banks' compliance with the Final Rule, FR 34,784-85, and full compliance is not due for any bank until at least January 2023. *See* OCC Mot. at 22. And, even though banks may now avail themselves of the qualifying activities criteria under the Final Rule, as the Complaint acknowledges, the forthcoming benchmarks and standards are necessary to ascertain the overall impact of the entire Final Rule. *cf. Arizona v. Atchison, T. & S. F. R. Co.*, 656 F.2d 398, 402-03 (9th Cir. 1981) (challenge was ripe because it was filed over two years after rule passed and the parties' positions had "crystallized"). Because of the present lack of benchmarks, thresholds, and key guidance, Plaintiffs' alleged harms are wholly speculative, lacking in immediacy or concreteness, and are constitutionally not ripe. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("'threatened injury must be *certainly impending* to constitute injury in fact,'" and "'[a]llegations of *possible* future injury' are not sufficient." (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990))).

Plaintiffs' claims are also not prudentially ripe. OCC Mot. at 22; *see Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1128 (9th Cir. 2009) (matter not prudentially ripe until applied policy guidance manifests in concrete way against plaintiffs). First, Plaintiffs' claims are not fit for judicial review at this time because, as the Complaint acknowledges, the effects of the Final Rule cannot be fully ascertained until the OCC promulgates the relevant performance benchmarks and thresholds. Therefore, the Court should "delay consideration" of Plaintiffs' claims until these facts have been "well-developed

[as] further factual development would aid the [C]ourt's consideration."[6] *In re Coleman*, 560 F.3d 1000, 1009 (9th Cir. 2009) (discussing when case is not fit for judicial review). Second, there is no current hardship to Plaintiffs (or their members) if the Court withholds judicial consideration because banks are not required to comply with the Final Rule in full until 2023, and banks' performance under the completed framework will not be assessed until after that time. *See* FR 34,784. Moreover, the allegation that banks will make consequential adjustments to their CRA activities in the near term, before benchmarks and thresholds have been issued and implementation guidance has been published, is speculative. *Cf.* OCC Mot. at 14 (citing FR 34,738 (to avoid uncertainty regarding availability of CRA credit, banks have gravitated to few types of activities that have received credit in the past)). Even if any hardship to Plaintiffs could be gleaned (it cannot), such hardship would be "insufficient to overcome the uncertainty of the legal issue[s] presented." *Colwell*, 558 F.3d at 1129. Plaintiffs' claims should thus be dismissed for prudential considerations.[7]

**IV.   BECAUSE THE COMPLAINT RAISES CLAIMS OUTSIDE CRA'S ZONE OF INTERESTS, IT SHOULD BE DISMISSED UNDER RULE 12(b)(6)**

Plaintiffs rely on outdated case law in attempting to show their claims are within CRA's zone of interests. Opp. at 25. The authorities Plaintiffs cite predate the Supreme Court's 2014 decision in *Lexmark*, which held that plaintiffs must show a legislatively conferred cause of action that encompasses their claims. 572 U.S. at 127. Thus, Plaintiffs' assertion that they "need only show that [their] interests

---

[6] Plaintiffs' argument that their claims are ripe merely because the challenged rule is final is misplaced. Opp. at 27. Plaintiffs' expansive view of ripeness would absurdly permit judicial review of any administrative action, regardless of whether there is harm traceable to the government. *California v. Bureau of Land Mgmt.*, --- F. Supp. 3d ---, 2020 WL 1492708, at *6 (N.D. Cal. Mar. 27, 2020) (no standing to challenge under APA where alleged injury not traceable to final rule but to industry activities generally) (appeal filed).

[7] Contrary to Plaintiffs argument, the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014), declined to substantively question the validity of the prudential ripeness doctrine. The Ninth Circuit continues to address prudential ripeness and to dismiss claims on those grounds. *See, e.g.*, *Blumenkron v. Eberwein*, 715 F. App'x 633, 635-36 (9th Cir. 2017) (unpublished) (claim not prudentially ripe); *see also Kohn v. State Bar of California*, No. 20-CV-04827-PJH, 2020 WL 4701092, at **4-5 (N.D. Cal. Aug. 13, 2020) (same); *cf. Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1154 (9th Cir. 2017) (analyzing prudential ripeness factors).

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

share a 'plausible relationship' to the policies underlying each statute," is incorrect. *See* Opp. at 25 (quoting *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 861 (9th Cir. 2005)). Under *Lexmark*, whether a plaintiff comes within a statute's zone of interests requires use of "traditional tools of statutory interpretation." 572 U.S. at 127. And therefore, Plaintiffs' reliance on their organizational missions to demonstrate that they are within CRA's zone of interests, is misplaced. Opp. at 25. *See also Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 n.1 (3d Cir. 2016) (analyzing whether harm fell within statute's zone of interests under Rule 12(b)(6)).

### A. Plaintiffs' Alleged Relationship to CRA and Alleged Injuries Demonstrate That They Are Not Within CRA's Zone of Interests

Plaintiffs' explanation of their relationship to CRA demonstrates that they are not within CRA's zone of interests. Plaintiffs state that they and their members are "the means by which communities use" CRA funding. Opp. at 26. Regardless of whether Plaintiffs receive CRA funding from banks, Plaintiffs—by their own description—provide services to CRA's intended beneficiaries. Thus, Plaintiffs and their members are, at best, secondary or incidental beneficiaries of CRA. The intended beneficiaries of CRA are, for example, LMI individuals, small businesses, farms, and members of communities of need. *See* 12 U.S.C. § 2901. The misinterpretation apparently pressed by Plaintiffs, *i.e.,* that "intended beneficiaries . . . include all incidental beneficiaries," would "confer standing on a larger group of claimants than the Constitution permits" and would render the zone-of-interests test "meaningless." *Liquid Carbonic Indus. Corp. v. F.E.R.C.*, 29 F.3d 697, 704 (D.C. Cir. 1994). Moreover, CRA does not directly regulate Plaintiffs nor does it provide Plaintiffs with a statutory role in supporting its purposes. OCC Mot. at 23-24. Plaintiffs' failure "to identify or explain what statutory provisions support their argument" that "their interests align with the statute" is fatal to their claim. *City & Cty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, 408 F. Supp. 3d 1057, 1117 (N.D. Cal. 2019), *appeal dismissed sub nom. La Clinica de La Raza, Inc. v. Trump*, No. 19-17483, 2020 WL 1170719 (9th Cir. Feb. 4, 2020) (granting unopposed motion for voluntary dismissal).

The four alleged injuries Plaintiffs identify further highlight that their claims are outside the scope of CRA's protected interests. Opp. at 12-13. Even assuming, *arguendo*, that Plaintiffs have

plausibly alleged these injuries, these injuries are plainly not among the interests CRA protected by CRA, which is "clearly intended to encourage federally regulated financial institutions to 'help meet the credit needs of the local communities in which they are chartered,'" *Exch. Bank v. Dir. of the Office of Thrift Supervision*, 29 F. Supp. 2d 1272, 1276 (N.D. Okla. 1998) (quoting 12 U.S.C. § 2901). *Cf. McKinney v. U.S. Dep't of Treasury*, 799 F.2d 1544, 1556-57 (Fed. Cir. 1986) (zone-of-interests test barred claim that organization suffered injury from engaging in "extensive research" because organization was not to be "protected or regulated" by statute).

Plaintiffs' assertion of competitive injury, *see* Opp. at 13-14, is also well beyond the bounds of CRA's zone of interests. *Lee v. Bd. of Governors of the Fed. Reserve Sys.*, 118 F.3d 905, 913 (3d Cir. 1997) (CRA "[does] not [contain] a directive to undertake any particular program or to provide credit to any particular individual."); *cf. Liquid Carbonic*, 29 F.3d at 705 (plaintiff's interest in opposing competitors' entry into market "has nothing to do with the energy conservation goals" of statute). Allowing organizations such as Plaintiffs to proceed on the theory of competitive injury would frustrate the statutory purpose of helping banks meet the credit needs of their communities. *Exch. Bank*, 29 F. Supp. 2d at 1276 ("CRA was designed to increase, not thwart, competition for previously underserved customers, and provide them with more, not less, access to credit."). This is exactly the type of interference that the zone-of-interests test, which "furthers the general recognition of standing doctrine that the decision to enforce legal rights usually belongs to the possessor of those rights," is designed to protect against. *Leaf Tobacco Exporters Ass'n, Inc. v. Block*, 749 F.2d 1106, 1111 (4th Cir. 1984).

## B.    Preserving Uniformity Across Agencies' Regulations Frustrates CRA's Purpose

The statutory purposes of CRA cannot be reconciled with Plaintiffs' asserted interest in forcing uniformity across agencies' CRA rules for the reasons explained in the OCC's opening brief. OCC Mot. at 24-25. Plaintiffs state that they "do not assert that OCC *could not* deviate from the other regulators— only that it did so arbitrarily and capriciously." Opp. at 26. But this clarification does not cure the fundamental error in Plaintiffs' theory. Plaintiffs' asserted interest calls for preserving a uniform regulatory scheme, regardless of whether that scheme is optimal for satisfying the statutory purpose of helping financial institutions meet the credit needs of their communities. *See* OCC Mot. at 24-25. Pursuit

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

of uniformity can frustrate innovation, an outcome CRA implicitly seeks to avoid by allowing agencies to promulgate rules independently. *See id.* Indeed, present experience illustrates that affording an agency the independence to break a regulatory logjam can serve as the impetus for broader efforts at modernization and improvement.[8]

**V.   PLAINTIFFS' CLAIMS OF *ULTRA VIRES* ACTION AND AN "UNALTERABLY CLOSED MIND" SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

### A.   Plaintiffs' Claims that the Final Rule Violates CRA's Statutory Mandates Each Lack a Cognizable Legal Basis

Plaintiffs fail to demonstrate (Opp. at 29-33) why their claims that the Final Rule violates the provisions of the CRA statute should survive dismissal for failure to state a claim. *See* F. R. Civ. P. 12(b)(6). They do not dispute that CRA confers broad agency discretion on the implementing details of rules to advance the statute's purposes. *See* OCC Mot. at 26 (citing cases and discussing 12 U.S.C. §§ 2905, 2906). And the specific statutory mandates they assert exist are, in fact, absent from the statute. OCC Mot. at 26-31. For example, there is no prohibition in either the statutory text or the legislative history preventing regulators from using a ratio of CRA activity to deposits as part of assessing a bank's CRA performance. *See id.* at 27. There is also no statutory restriction disallowing the OCC's assignment of ratings based on performance in a percentage of a bank's assessment areas or based on performance in the assessment areas from which a certain percentage of the bank's deposits are received. *See id*. at 28-29. Furthermore, there is no requirement under § 2906, or elsewhere, for the OCC to promulgate regulations requiring the delineation of formal assessment areas around deposit-taking ATMs. Rather,

---

[8] *See* Federal Reserve System, CRA Advanced Notice of Proposed Rulemaking (Sept. 22, 2020), at 29, 81, 84, 88-89, *available at* https://www.federalreserve.gov/aboutthefed/boardmeetings/files/cra-fr-notice-20200921.pdf (seeking feedback on proposals similar in respects to the Final Rule to, *e.g.*, use 15 percent threshold to determine whether a bank's retail lending products should be evaluated as major product lines; make inflationary update to small-farm and small-business revenue and loan size thresholds; and give banks option of delineating assessment areas around deposit-taking ATMs); *see also* "As CRA Rule Takes Effect, OCC Issues Compliance Resources," ABA Banking Journal (Oct. 1, 2020), *available at* https://bankingjournal.aba.com/2020/10/as-cra-rule-takes-effect-occ-issues-cra-compliance-resources/ (quoting Acting Comptroller Brooks: "I've told the Fed that if they get good comments in response to their rulemaking, we're not beyond the prospect of improving [the OCC's rule] even more.").

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

§ 2906(b) requires that the OCC evaluate "metropolitan areas" with deposit-taking facilities, including ATMs—a statutory duty that the OCC will continue to perform regardless of whether formal assessment areas are delineated. *See* OCC Mot. at 29 (citing FR 34,756 n.85). Having failed to counter the OCC's arguments, Plaintiffs effectively concede these points. *See Flower v. Wachovia Mortgage FSB*, No. C 09–343 JF (HRL), 2009 WL 975811, at *5 (N.D. Cal. Apr. 10, 2009) ("Plaintiffs do not dispute this point, and therefore concede it." (citing *New Grade Int'l, Inc. v. Scott Techs.,* No. C03–2628RSM, 2004 WL 5571416, at *5 (W.D. Wash. Nov. 30, 2004))); *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011).

### 1. The OCC's 12(b)(6) Motion Is Appropriate

Rather than contest the OCC's substantive points, Plaintiffs wrongly argue that the OCC's motion is procedurally deficient because, as they assert, it seeks to dismiss "select portions of a claim." Opp. at 29. This is simply inaccurate; the OCC is seeking to dismiss, in their entirety, Plaintiffs' claims that the OCC's issuance of the Final Rule was *ultra vires*. OCC Mot. at 26-31. Courts routinely analyze discrete claims under these provisions of the APA separately for the purposes of a Rule 12(b)(6) motion and will dismiss an *ultra vires* claim that lacks a cognizable legal theory, regardless of whether a plaintiff can or does adequately plead additional arbitrary and capricious claims. *See Ctr. for Envtl. Health v. Perdue*, No. 18-CV-1763-RS, 2018 WL 9662437, at *7 (N.D. Cal. Aug. 21, 2018) (dismissing APA *ultra vires* claim, but acknowledging that allegations pled could potentially support an APA claim of arbitrary and capricious action); *see also Saget v. Trump*, 375 F. Supp. 3d 280, 346 (E.D.N.Y. 2019) ("Setting aside agency action that is 'not in accordance with law' is '[s]eparate and apart from ... set[ting] aside agency action that is arbitrary and capricious.'" (quoting *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 629 (S.D.N.Y. 2019) (alterations in original)).

### 2. Plaintiffs' *Ultra Vires* Claims Lack a Cognizable Legal Basis

In their Complaint, Plaintiffs assert four *ultra vires* claims relating to alleged violation of the CRA's mandates and, in their Opposition, they seek to add a fifth claim:

(1) the Final Rule's "ratio-based framework" is "contrary to the statutory command" and the "general performance standard [*sic*] is [*sic*] contrary to . . . CRA," Compl. ¶ 166;[9]

(2) the Final Rule's approach to assigning ratings violates the statute's requirement that the OCC assess a bank's record of serving its "entire community," *id.*;

(3) by allowing banks to decide whether to delineate facility-based assessment areas around deposit-taking ATM's, the Final Rule is contrary to the statute, *id.*;

(4) the Final Rule is "contrary to . . . CRA" because it does not "require banks to focus their efforts on supporting LMI communities, communities of color, and other communities . . . historically . . . subject to discrimination . . .," *id.* ¶ 169; and,

(5) the Final Rule's requirements governing the delineation of deposit-based assessment areas contravene CRA's statutory mandates, Opp. at 30.

As discussed above, with respect to claims 1 through 3 Plaintiffs tacitly concede that no such statutory mandates exist, making each of those claims subject to dismissal for failure to state a claim as a matter of law. *See Ctr. for Envtl. Health,* 2018 WL 9662437, at *6. Plaintiffs' argument regarding claim 4 fares no better. Plaintiffs do not dispute that one of the purposes of CRA is to reduce disinvestment from banks' communities. *See* OCC Mot. at 30. Moreover, Plaintiffs do not dispute that, unlike the fair lending laws, the statutory language of the CRA statute does not address discrimination based on race or other protected classes. *See id.* at 31-32. Thus, Plaintiffs cannot identify a single specific CRA statutory requirement that the OCC has failed to satisfy. To encourage banks to help meet the needs of their communities, *see* 12 U.S.C. § 2901(b), CRA requires the Federal financial supervisory agencies to "assess [an] institution's record of meeting the credit needs of its *entire* community, *including* low- and

---

[9] Plaintiffs accuse the OCC of creating a "strawman" in arguing for dismissal of claim 1. Opp. at 31. The OCC's description of claim 1, however, is an accurate reading of the Complaint, which consistently mischaracterizes the Final Rule's general performance standards as being a "single ratio" framework and asserts that using a ratio of CRA activity over deposits to measure performance is contrary to statute. *See* Compl. ¶ 119.

Plaintiffs also obfuscate the multiple measures and considerations that make up the Final Rule's general performance standards by repeatedly referring to them inaccurately in the singular form. Compl. ¶¶ 109, 110, 112, 113, 124, 127, 128, 144, 157, 166; Opp. at 8, 9, 30. They offer no counter, however, to the OCC's detailed explanation of the *multiple* measures and considerations that make up the general performance standards. OCC Mot. at 6-9, 20.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

moderate-income neighborhoods." 12 U.S.C. § 2903(a)(1) (emphasis added). It is beyond dispute that activities that benefit LMI individuals and communities *are* eligible for CRA credit under the Final Rule and that the Final Rule is structured to *encourage* these activities in multiple ways. OCC Mot. at 19-20, 30-31. Plaintiffs' allegation that these aspects of the rule are insufficient to satisfy § 2903's stated requirements related to LMI communities is conclusory and based on "unwarranted deductions of fact, or unreasonable inferences" that are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). This inevitable conclusion follows from the text of the Final Rule and is not, as Plaintiffs suggest (Opp. at 33), intertwined with questions of whether the rule will have its intended effects.

Finally, the Court should conclude that claim 5, newly articulated in the Opposition,[10] also lacks a legal basis because, as Plaintiffs concede, the CRA statute does not set forth any requirement to delineate assessment areas. *See* OCC Mot. at 28-29 (assessment areas are a regulatory construct to identify banks' communities, not a statutory requirement). In other words, Plaintiffs may allege that the OCC should have adopted a different approach for delineating deposit-based assessment areas to achieve certain desired policy outcomes; but no aspect of this part of the Final Rule conflicts with a statutory requirement. Furthermore, Plaintiffs make no response to the fundamental point that under the Final Rule the OCC will continue to assess banks in *all* of their assessment areas, as well as assess bank-level CRA activity outside assessment areas, *see* OCC Mot. at 28, such that banks may not, as Plaintiffs assert (*e.g.*, Opp. at 16, 18, 31), "ignore" any of their communities.

Because all five of Plaintiffs' APA-claims of *ultra vires* action lack a "cognizable legal theory" and fail to plausibly allege facts in support of any violation of statutory mandates, they are subject to dismissal with prejudice for failure to state a claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Ctr. for Envtl. Health*, 2018 WL 9662437, at *6 ("Plaintiffs can point to nothing in either the text or legislative history . . . that even suggests congressional intent to bar cost-

---

[10] *See Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020) ("it is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'").

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

benefit analysis in connection with the promulgation. . .. For that reason, defendants' motion to dismiss this claim is granted, without leave to amend.").[11] This legal conclusion results from the text of the CRA statute, without need of reference to the administrative record beyond the text of the Final Rule. *See Ctr. for Envtl. Health v. Perdue*, No. 18-CV-1763-RS (N.D. Cal. 2018) (Rule 12(b)(6) dismissal of *ultra vires* claims granted, ECF Dkt. No. 34, prior to filing of administrative record, ECF Dkt. No. 47).

### B. As a Matter of Law, Plaintiffs' Allegations Do Not Support a Claim of an "Unalterably Closed Mind"

The Court should also dismiss Plaintiffs' claim that the Final Rule is arbitrary and capricious because former Comptroller Otting had an "unalterably closed mind" in reaching the Final Rule. Opp. at 31-32. Plaintiffs' claim fails as a matter of law because none of the former Comptroller's alleged statements or actions relied upon by Plaintiffs occurred *during* the rulemaking period, *i.e.*, the period between the January 9, 2020 issuance of the Joint Notice of Proposed Rulemaking ("JNPR"), 85 Fed. Reg. 1204 (Jan. 9, 2020) and the June 5, 2020 issuance of the Final Rule. Plaintiffs have not responded to the OCC's cited authorities, OCC Mot. at 32-33, which establish that allegations of a decisionmaker's *pre-rulemaking* comments are insufficient to state a claim of an unalterably closed mind. Plaintiffs therefore effectively concede these arguments. *See supra* at 15.[12]

In support of their position that they have stated a claim, Opp. at 31-32, Plaintiffs reiterate inapposite allegations concerning former Comptroller Otting, the business activities of his former employers, and subordinate OCC personnel. *All* of the alleged statements or activities predate the issuance of the JNPR. *See* Compl. ¶¶ 38-50.[13] Thus, even accepting them as true and viewing them in the light most favorable to Plaintiffs, these allegations cannot support a cognizable claim of an

---

[11] The OCC opposes grant of leave to amend the Complaint as futile because the statutory mandates Plaintiffs assert do not exist. *See Serra v. Lappin*, No. C07-01589 MJJ, 2008 WL 929525, **7-8 (N.D. Cal. Apr. 3, 2008) (dismissing due to lack of cognizable legal theory and denying leave to amend due to futility) (citing *Schmier v. U.S. Court of Appeals for Ninth Circuit,* 279 F.3d 817, 824 (9th Cir. 2002)).

[12] The OCC need not address Plaintiffs' arguments on converting the OCC's motion to dismiss to a motion to strike because all of Plaintiffs' allegations fail to support the claim as a matter of law.

[13] The PDF cited in ¶ 43 n.11 is undated; metadata shows it was last modified in February 2018.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

unalterably closed mind. *Ass'n of Nat'l Advertisers, Inc. v. Fed. Trade Comm'n*, 627 F.2d 1151, 1173 (D.C. Cir. 1979) ("an expression of opinion prior to the issuance of a proposed rulemaking does not, without more, show that an agency member cannot maintain an open mind during the hearing stage"). Plaintiffs did not plead allegations supporting closemindedness within the rulemaking period,[14] and as the Ninth Circuit has forcefully explained, courts cannot simply presume the existence of impropriety:

> We have neither moral or legal right to presume that only those who occupy judicial office respect their obligations and perform their official duties honestly, sincerely and conscientiously. Nor can we presume the subordinate personnel to be a camarilla. It requires more than mere allegation (or affidavit on information and belief, which is not even found here) to upset the presumption of validity attaching to public proceedings and the formal recitations of public officials.

*Willapoint Oysters v. Ewing*, 174 F.2d 676, 696 (9th Cir. 1949).

Former Comptroller Otting's alleged statements prior to the issuance of the JNPR do not reflect a firmly held commitment to any specific decision point of the Final Rule, and even if they did, the "simple fact that [the decisionmaker has] explored issues based on legal and factual assumptions . . . d[oes] not necessarily bind him to them forever." *Ass'n of Nat'l Advertisers*, 627 F.2d at 1172. For these reasons, Plaintiffs' claim that former Comptroller Otting had an unalterably closed mind on matters critical to the Final Rule must be dismissed as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss should be granted.

Dated: October 13, 2020

Respectfully submitted,

*/s/ Ashley W. Walker*
JONATHAN GOULD (DC Bar No. 477569)
Senior Deputy Comptroller and Chief Counsel
BAO NGUYEN (NC Bar No. 39946)
Principal Deputy Chief Counsel
GREGORY F. TAYLOR (DC Bar No. 417096)

---

[14] To the extent Plaintiffs assert that alleged swiftness in the issuance of the Final Rule supports their claim, these allegations are also legally insufficient. *See California v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1071-72 & n.6 (N.D. Cal. 2018) (nothing in timeline of agency's processes showed closed mindedness where agency "followed the required procedures and addressed specific comments in support of and in opposition to" proposed rule).

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Director of Litigation
PETER C. KOCH (IL Bar No. 6225347)
Assistant Director of Litigation
MARSHA STELSON EDNEY (DC Bar No. 414271)
Counsel
ASHLEY W. WALKER (DC Bar No. 488126)
Counsel
ALISSA V. SAGRI (MD No. 0812180099)
Counsel
AMBER N. MELTON (MD No. 1405200002)
Counsel
HANNAH E. HICKS (AL Bar No. 9577S61W)
Attorney
Office of the Comptroller of the Currency
400 7th Street, SW
Washington, D.C. 20219
Telephone: (202) 649-6300
Facsimile: (202) 649-5709
ashley.walker@occ.treas.gov

*Attorneys for Defendants*

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 20-CV-04186- KAW

20